towns for the year 1897, and corrected and examined and verified said return until I was satisfied that it was correct, to the end and preparatory and as part of the preparation of the list required by section 15 of chapter 226 of the Laws of 1878." Thereafter the entries were changed from time to time as some of the arrears were paid up by the owners. The appellant's counsel argues that the proceeding to sell lands for unpaid taxes begins with the publication of the list prescribed by the statute, and that the preparation of the list is no part of the proceeding; and he likens such preparation to the drafting of a complaint, which could in no wise be deemed the commencement of an action. But work done by a public officer in a public office, which is absolutely necessary to the fulfillment of a public duty imposed upon him by law, bears no very close analogy to the composition of a pleading in a private lawsuit, which may never be begun at all; and it seems to me that the proceeding to sell for unpaid taxes may fairly be regarded as having been commenced by the defendant when he began to prepare the list, in August, 1898. The Nassau county act (section 12) provides that the books, records, and documents relating to Hempstead, North Hempstead, and Oyster Bay shall remain the property of the county of Queens; and the fact that the returns of the unpaid taxes for these towns are thus left in the custody of the treasurer of Queens county is some indication of the legislative intent to allow that officer to deal with such arrears therein as had been returned to him before the erection of the new county. To compel the county treasurer of Nassau county to prepare the list of lands to be sold in these towns for the unpaid taxes of 1897 would be to require him to duplicate, to a great extent, labor which has already been performed by the county treasurer of Queens.

I think that the order of the special term should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.

---

(29 Misc. Rep. 126.)

SIMON et al. v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Term.   October 4, 1899.)

1. STREET RAILROADS—DUTY TO REPAIR STREETS—LIABILITY FOR INJURY—NOTICE.

Under Railroad Law, § 98, making it the duty of surface roads to keep in repair the street between, and two feet outside, their tracks, "under supervision of the local authorities and whenever required by them to do," where the company has notice of a defect it is not relieved of liability for damages by the fact that the notice was not given by any local authority.

2. SAME—ABANDONMENT.

In an action against a surface road for injuries caused by a defect in the street contiguous to its track, which it was by law required to keep in repair, defendant admitted it maintained the tracks and attended to the care of the street, and the only evidence of nonuser was an incidental statement of a witness that, "since the car stopped running there, the street was neglected very much." *Held*, that the defense that defendant was not using the tracks at the time of the injury was not available.

Appeal from municipal court, borough of Manhattan, First district.

Action by Marcus Simon and others against the Metropolitan Street-Railway Company. There was a judgment for plaintiffs, and defendant appeals. Affirmed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVEN-TRITT, JJ.

Henry A. Robinson (Sharon Graham, of counsel), for appellant.

Jacob Levy, for respondents.

MacLEAN, J. This action is brought to recover for an injury to the plaintiffs' horse, which in November of 1898, while being driven along the public street, stepped into a hole about 20 inches long and several inches deep, contiguous to one of the rails of a railway track belonging to the defendant, and which the defendant was bound to keep in repair, under section 98 of the railroad law. No question is raised as to the amount of damages. The defendant contends that it is not liable in the premises, because section 98 of the railroad law only makes it the duty of a street surface railroad company to keep in permanent repair the street between and two feet in width outside of its tracks "under the supervision of the proper local authorities and whenever required by them to do," and there is no evidence in this case that notice was given to the defendant by any local authority of the condition of the pavement. But such notice, as has been authoritatively held, is not a condition precedent to the performance by the defendant of the duty assumed by it of keeping the public thoroughfare in repair, neglect of which renders it liable in a civil action to any one of the public sustaining special damage from such neglect. City of Brooklyn v. Brooklyn City R. Co., 47 N. Y. 475. Of the bad condition of the street, which was testified to by several persons, the defendant was aware, through its officer, some months before the accident; for its track foreman testified that the street had been torn up in the month of August, and that, coming along there and seeing it was in bad condition, he had sand and dirt furnished, and the stones relaid temporarily.

Again, the defendant urges that it was not liable herein because the plaintiffs failed to show that the defendant was using the tracks upon the street at the time of the alleged injury, and that the contrary affirmatively appears in the case. That defense cannot be availed of here, because the defendant, after expressly admitting in its answer the allegation in the plaintiffs' complaint that the defendant was the owner or lessee of, or maintained, tracks upon and along the public street, proved by its own witness that it (the defendant) attended to the care of the street. There was no evidence of abandonment or nonuser of the track in the case, excepting that a truckman incidentally said that, "since the car stopped running there, Bleecker street was neglected very much." The judgment should be affirmed, with costs.

Judgment affirmed, with costs to the respondents.

FREEDMAN, P. J., concurring. LEVENTRITT, J., taking no part.